ERNA SCHLESINGER, Respondent, *v.* ITALIAN LINE, " ITALIA " SOCIETA ANONIMA DI NAVIGAZIONE OF GENOA, Appellant.

First Department, April 10, 1951.

*Peter Keber* of counsel (*Morgan J. Burke* with him on the brief; *Dorsey & Adams,* attorneys), for appellant.

*Jack Flamhaft* for respondent.

GLENNON, J. Plaintiff, a nonresident, was a passenger on a ship owned by defendant en route from Genoa, Italy, to Arica, Bolivia, when it caught fire and sank in the Mediterranean Sea on January 21, 1940. Shortly thereafter in Genoa, Italy, plaintiff and certain other passengers executed an instrument written in the Italian language whereby two Italian lawyers were retained to act for them with respect to their claims for damages. The attorneys were vested with " every power, including the power of compromising, collecting, and issuing of receipts." Acting upon the authorization, they instituted an action against defendant in the Genoa Court of Justice to recover damages for the loss of plaintiff's baggage. In June, 1942, after extended negotiations, the action was settled, along with others arising out of the disaster, and the proceeds deposited with a Genoa bank in accordance with the terms of the deed of settlement. Plaintiff now brings this action to recover damages for the loss of the same baggage. She admits signing the retainer agreement but claims that it was signed in the belief that it was a statement as to the fire and sinking of the vessel.

Defendant is a foreign corporation engaged in foreign commerce. It seeks a dismissal of the complaint on the basis of the release claimed to have been executed by plaintiff's duly authorized attorneys, and on the further ground that the court does not have jurisdiction of the subject matter. In view of the claim that the retainer was executed in reliance upon a representation that it was a statement relating to the fire and bearing upon the validity of the retainer, and the effectiveness of the deed of settlement. The question remaining, therefore, subsequent sinking of the vessel, a question of fact is posed

is whether the maintenance of the action will constitute an unreasonable interference with foreign commerce in contravention of section 8 of article I of the Constitution of the United States so as to deprive the court of jurisdiction.

The admonition that no undue burden is to be imposed upon foreign or interstate commerce does not extend to the interference with such commerce occasioned by the reasonable requirements of orderly and effective administration of justice (*Davis* v. *Farmers Co-Operative Co.*, 262 U. S. 312). In determining whether a reasonable burden will be imposed, it is necessary to consider the nature of the action sought to be prosecuted and the effect the defense of the action will have upon the foreign or interstate commerce engaged in by the particular defendant involved. The constitutional prohibition is directed against an interference which is real and substantial, as well as unreasonable. A consideration of those factors in this case leads to the conclusion that the orderly and effective administration of justice does not require the maintenance of the action in this State and that its prosecution here will impose an unreasonable burden upon the commerce in which defendant is engaged (*Ball* v. *Canadian Pacific Steamships, Ltd.*, 276 N. Y. 650).

The contract claimed to have been breached was not made in this State, nor did the cause of action arise here. None of the issues which would be presented in the case is in any way connected with defendant's activities in this jurisdiction. The extent of the business carried on by the defendant in New York consists of the transportation by steamship of persons and property in and out of the port of the City of New York. Unlike the defendant in *Hirliman* v. *Southern Pacific Co.* (268 App. Div. 192) it owns no property in this State, none of its officers or corporate records are here and its activities are confined to those relating to the arrival and departure of its ships.

The action arises out of a disaster of major proportions which occurred over ten years ago in defendant's home waters. The home office undoubtedly acquired firsthand knowledge of the facts as the result of investigations and the subsequent settlement of the claims and actions arising out of it. Neither the officers or employees of defendant having knowledge of the facts nor the records pertaining thereto are here, not to mention the court and other official records relating to the occurrence in general and plaintiff's action in particular. To compel a defense of the action here in the circumstances disclosed would impose a burden upon the commerce in which defendant is engaged not

required by the orderly and effective administration of justice. The fact is that the controversy may be more effectively and suitably determined in the foreign tribunal. To be sure, defendant's ships come to our ports, but that fact standing alone does not resolve the problem. There is still the question as to whether defendant's foreign commerce will be unreasonably disturbed by the maintenance of the action. As we have seen, a defense of the action here would be an unreasonable requirement.

Moreover, a further ground for dismissal of the complaint is apparent. Plaintiff, a nonresident, sues another nonresident to recover damages under a contract made and breached in another jurisdiction. While our courts have generally accepted jurisdiction of transitory contract actions, they nevertheless have some discretion in the matter. Where it is shown that unusual or special circumstances exist, and it appears that the ends of justice will be better served by a trial in another jurisdiction, our courts may refuse to entertain the action (*Belden* v. *Wilkinson*, 44 App. Div. 420). The soundness of such a rule may not seriously be questioned. It has been followed in other jurisdictions (see *Universal Adjustment Corp* v. *Midland Bank, Ltd.*, 281 Mass. 303 and cases therein cited).

By this action plaintiff seeks to nullify legal proceedings instituted in a foreign jurisdiction predicated upon an instrument which she admits executing. The attack upon those proceedings in the light of all the facts and circumstances disclosed warrants the exercise of discretion against acceptance of jurisdiction. Accordingly, the order appealed from should be reversed, with $20 costs and disbursements and the motion to dismiss the complaint granted, with costs.

PECK, P. J. (concurring). I am not so much persuaded that entertaining this action here would be a burden on interstate commerce as I am that a sound discretion exists and should be exercised to refuse to entertain it. On the facts, this action between nonresidents which might be likened to a tort action, is tantamount to an attack on a foreign judgment and settlement of a cause of action arising outside the United States. On the grounds stated in the latter part of the opinion, I concur for reversal and dismissal.

VAN VOORHIS, J. (dissenting). In the cases which have been cited where courts have declined to assume jurisdiction in actions by nonresidents against foreign railroad corporations upon transitory causes of action arising outside of the State,

no part of the defendant's railroad has been located within the State in which the action was commenced (e. g., *Davis* v. *Farmers Co-Operative Equity Co.*, 262 U. S. 312; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Wells*, 265 U. S. 101; *Michigan Central R. R. Co.* v. *Mix*, 278 U. S. 492; *Klepper* v. *Canadian Pacific Ry. Co.*, 271 App. Div. 53). This has been regarded as a controlling distinction (*Denver & Rio Grande Western R. R. Co.* v. *Terte*, 284 U. S. 284, thus interpreted on this point in *International Milling Co.* v. *Columbia Transportation Co.*, 292 U. S. 511, 519).

*International Milling Co.* v. *Columbia Transportation Co.*, upholding the jurisdiction of the court in which the action was instituted, held that a steamship company which has a regular terminus in the State is analogous to a railroad company which has part of its line therein. The language to that effect was quoted and the case followed by this court in *Hirliman* v. *Southern Pacific Co.* (268 App. Div. 192). *Ball* v. *Canadian Pacific Steamships, Ltd.* (276 N. Y. 650) appears not to be to the contrary, inasmuch as the Canadian Pacific's ships had no regular terminus in New York City, but entered this harbor only irregularly in making world cruises. The business referred to in the Reporter's syllabus in the *Ball* case as having been booked in New York for transportation to Canada, was effected over other carriers' routes to Canada, and thence by Canadian Pacific steamships to other parts of the world. The steamships in *Matter of Baltimore Mail S.S. Co.* v. *Fawcett* (269 N. Y. 379) touched at no port in this State.

In the present action, the ships of the Italian Line ply regularly in and out of New York Harbor, which is a main terminus for the line.

The inconvenience resulting to defendant from trying the action in New York would be at least offset by the inconvenience to plaintiff of leaving her domicile in Louisiana to try it in Italy.

The order appealed from should be affirmed, with $20 costs and printing disbursements.

HEFFERNAN, J., concurs with GLENNON, J.; PECK, P. J., concurs for reversal and dismissal, in opinion; VAN VOORHIS, J., dissents and votes to affirm in an opinion in which SHIENTAG, J., concurs.

Order reversed, with $20 costs and disbursements to the appellant and the motion to dismiss the complaint granted, with costs. Settle order on notice.